```
                    IN THE UNITED STATES DISTRICT COURT

                        FOR THE DISTRICT OF OREGON

                             EUGENE DIVISION

KENNETH R. HARRIS,                    )
                                      )
            Plaintiffs,               )   Civil  No. 08-6308-HO
                                      )
                                      )
                 v.                   )   ORDER
                                      )
SUTTON MOTOR SALES & RV               )
CONSIGNMENTS CORP. dba GEORGE M.      )
SUTTON RV,                            )
                                      )
            Defendants.               )
_____)
```

Plaintiff Kenneth Harris brings this action alleging claims for race discrimination, retaliation, violation of whistleblowing laws, and intentional and reckless infliction of emotional distress. Defendant George M. Sutton RV seeks summary judgment on all claims.

Sutton RV President George Sutton and Sutton RV Sales Manager Dave Mowell hired plaintiff on January 18, 2007 as a lot specialist at $10 per hour.

According to plaintiff, on February 7, 2007, fellow employee Pat Tallerday called plaintiff "Arnold Schwarzennigger" when referring to plaintiff polishing a fifth wheel trailer. Plaintiff states that he told Tom Locke, a co-worker, about the statement and that he did not like it.

On March 9, 2007, Dave Mowell signed a form raising plaintiff's pay to $11 per hour.

Plaintiff maintains that on May 18, 2007, Tom Locke repeatedly used the word "nigger" and stated plaintiff could be a nigger. Plaintiff states that Locke also talked about his father's opinion of black people on this occasion. Plaintiff called George Sutton at home that night, but did not tell him about the comments. The next day, plaintiff tried to talk to Dave Mowell about the incident, but plaintiff claims Mowell told him to "stay out of my office, you S.O.B." and slammed the door.

On June 1, 2007, Mowell and Sutton decided to promote plaintiff to Lot Maintenance Supervisor and raised his pay to $15 per hour.

Plaintiff maintains that he made complaints about safety material safety data sheets (MSDS) regarding chemicals employees used. Plaintiff also states that he complained the "hot stuff"

needed to be diluted more and complained about the way people were driving forklifts. Plaintiff states that he complained about safety issues "way before" his promotion.

Defendant maintains that on November 3, 2007, Dave Mowell counseled plaintiff regarding job deficiencies. Plaintiff denies this occurred. Defendant maintains that plaintiff's job performance and attitude got worse.

On January 4, 2008, Dave Mowell reviewed plaintiff's work and demoted plaintiff back to Lot Specialist and reduced plaintiff's pay to $11 per hour. Defendant maintains that plaintiff became progressively agitated and threatened to "kick some butt" and yelled at Mowell. On January 7, 2008, defendant fired plaintiff. Defendant asserts that plaintiff was fired for insubordination and gross disrespect to management.

Plaintiff subsequently called OSHA to complain that he got chemical hot stuff in his eyes and filed a worker's compensation claim, that was denied.

Plaintiff later filed a BOLI complaint and the investigator made a substantial evidence determination that defendant subjected plaintiff to racial harassment and retaliated for opposition to unlawful employment practices.[1]

Plaintiff asserts state and federal claims for race discrimination, retaliation, and hostile work environment.

---

[1] The BOLI investigator did not interview key players such as Locke and Tallerday.

Plaintiff alleges federal claims under both Title VII and 42 U.S.C. § section 1981. Plaintiff also alleges a claim for violation of state whistleblowing laws and for intentional and reckless infliction of emotional distress under state law. Plaintiff also alleges a claim for violation of ORS § 654.062 based on alleged termination for making complaints about safety.

Plaintiff concedes his whistleblowing claim under ORS § 659A.203 and that claim is dismissed.

A.   Disparate Treatment

The federal and state claims for disparate treatment are analyzed together. See Henderson v. Jantzen, Inc., 79 Or.App. 654, 657 (1986) (adopting Supreme Court's formulation of prima facie case).[2] Under this approach, plaintiff must establish that

---

[2] Plaintiff contends that the state law claims are not subject to the burden shifting standard of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), citing Messick v. Horizon Industries Inc., 62 F.3d 1227, 1232 (9th Cir. 1995). However, in Snead v. Metropolitan Property & Cas. Ins. Co., 237 F.3d 1080, 1092 (9th Cir. 2001), the Ninth Circuit held that the language in Messick was dicta and stated

> Until now, the question of whether we should apply the McDonnell Douglas burden-shifting scheme to state law claims was an open question. Accordingly, we need not follow Messick's assumption. Our conclusion is also consistent with circuit law on the application of federal summary judgment procedures in diversity cases. See Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir.1994).... We must, therefore, examine the evidence tendered on summary judgment beyond the prima facie case in accordance with McDonnell Douglas' burden-shifting model.

While other judges in this district decline to apply the burden shifting standard for Oregon claims where jurisdiction over state law claims is supplemental, see, e.g., Adams v. Home Depot USA, Inc., 2007 WL 4565163 (D.Or. 2007), there is no reason to distinguish between supplemental and diversity jurisdiction.

4 - ORDER

(1) he is a member of a protected class; (2) he is qualified for his positions; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside the protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. See Cornwall v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th cir. 2006). If plaintiff establishes these elements, then the burden shifts to defendant to produce some evidence demonstrating a legitimate, nondiscriminatory reason for the employment actions it took. McDonnell Douglas, 411 U.S. at 802. If defendant meets this burden, any presumption that defendant discriminated drops from the case, and plaintiff must then show that defendant's alleged reasons for the actions were merely a pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993). The burden of persuasion, as opposed to production, however, remains with the plaintiff at all times. Id. at 511. Plaintiff may prove pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. Raad v. Fairbanks North Star Borough School Dist., 323 F.3d 1185, 1196 (9th Cir. 2003).

Plaintiff disputes defendant's assertion that he was not qualified as a Lot Maintenance Supervisor and plaintiff disputes

that he engaged in insubordinate behavior. Defendant has produced statements from other employees that plaintiff had difficulty understanding directions and had difficulty reading instructions. Defendant also produces employee statements that plaintiff became stressed and agitated after his promotion and that he had a poor attitude and acted aggressively. Plaintiff merely presents his own testimony to dispute this. Conclusory allegations unsupported by factual data cannot defeat summary judgment. See Arpin v. Santa Clara Valley Trans. Agency, 261 F.3d 912, 922 (9th Cir. 2001).

Even if plaintiff's conclusory allegations that he was qualified for the job were enough to suffice, plaintiff has the ultimate burden of persuading a trier of fact that defendant intentionally discriminated against him. Plaintiff cannot merely dispute defendant's legitimate reasons for the demotion and termination and raise an inference of discriminatory intent. Even if plaintiff makes out a prima facie case, he must still show that defendant was motivated out of discrimination or that the proffered reason is unworthy of credence. See Villiarimo v. Aloho Island Air, Inc., 281 F.3d 1054, 1062-63 (9th Cir. 2002). Merely disputing the statements of defendant's President, Sales Manager and various employees is insufficient to raise an inference of pretext in light of the fact that plaintiff can only point to two episodes in which co-workers used racial slurs and a failure of defendant to address

those slurs.[3]  However, after plaintiff complained, defendant promoted plaintiff. Plaintiff points to no post-promotion activity suggesting differential treatment on the basis of race. Accordingly, no inference of intent to discriminate can be reasonably made. See Otsyula v. Oregon Department of State Lands, 2008 WL 5246092 @ *6-7 (D.Or. 2008)(intervening positive treatment breaks chain of causation between racists comments and adverse employment action).

Plaintiff asserts that he received positive performance evaluations primarily based on his promotion, but does not demonstrate any positive evaluations after his promotion. This is entirely consistent with defendant's proffered explanation for the termination. No reasonable fact finder could conclude that race played any role in defendant's decision to terminate plaintiff.

Plaintiff also relies on statements by Terry Thiesfeld purportedly made during the BOLI investigation that it was "clear that Mowell was bigoted," and that after plaintiff complained about race comments Mowell "would look for a way to get rid of plaintiff."  In light of the subsequent promotion by Mowell, the

---

[3]Plaintiff also contends a comment by Mowell that he could "get a couple of *esses* to do a better job than you Kenny ... I used to like you," is demonstrative of differential treatment based on race.  However, plaintiff states that the *esse* comment was in reference to Mexicans and does not demonstrate it was based on plaintiff's race.  Moreover, this comment also occurred prior to plaintiff's promotion.

7 - ORDER

statement does not raise an inference of discriminatory intent.[4] Furthermore, in his deposition, Thiesfeld stated that he does not stand by his statement that Mowell is bigoted and he clarified that at the time he made the statement he was extremely upset with Mowell.  Deposition of Terry Thiesfeld at pp. 30-31 (attached to Declaration of Margaret J. Wilson (#26) as Exhibit 3). Additionally, Thiesfeld clarified that Mowell was looking for a reason to get rid of plaintiff due to his performance and it had nothing to do with race.  Id. at p. 34.

Again, even if plaintiff's own assertion, that he was fired because he was a black man and that management had never seen a black supervisor work for defendant and do a good job, is sufficient to challenge the contention that he was not qualified for the job, it does not raise an inference that defendant did not honestly believe its legitimate reasons for terminating plaintiff. As the Ninth Circuit has noted, in "judging whether [a defendant's] proffered justifications were 'false,' it is not important whether they were objectively false .... Rather, courts 'only require that an employer honestly believe its reasons for its actions, even if its reason is 'foolish or trivial or even baseless.'" Villiarimo, 281 F.3d at 1063.  Given the promotion subsequent to the alleged complaints of racism, no reasonable fact finder could conclude that

---

[4]The statement is contained in the BOLI investigator's report based on the investigator's recollection of what Thiesfeld told him over the phone.

race played a role in the decision to terminate and that defendant did not believe plaintiff was doing a poor job and was insubordinate. The motion for summary judgment is granted with respect to the disparate treatment claims alleged under Title VII, section 1981, and ORS § 659A.030.

B.  Retaliation

State and federal retaliation claims are analyzed together. See, e.g., Harris v. Pameco Corp., 170 Or. App. 164, 179 (2000). To prevail on a retaliation claim, plaintiff must show: (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action;  and (3) that there is a causal connection between the protected activity and the adverse employment action. Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 965 (9th Cir. 2004).

Plaintiff asserts he made multiple complaints about racial remarks. The record reveals complaints to management on or about May 19, 2007. However, after plaintiff complained about racist remarks, he was promoted. Over six months later, Plaintiff was demoted and terminated. For the reasons stated above, there is insufficient evidence of a causal link between the complaints and the adverse employment action. The motion for summary judgment is granted with respect to the retaliation claims under Title VII, section 1981, and ORS 659A.030.

C.  Hostile Work Environment

Plaintiff alleges that defendant's action created a hostile work environment toward people of color. To prevail on this claim, Plaintiff must show: (1) that he was subjected to verbal or physical conduct because of his race; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. See Gregory v. Widnall, 153 F.3d 1071, 1074 (9th Cir. 1998). The required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct. Steiner v. Showboat Operating Co., 25 F.3d 1459, 1463, n.4 (9th Cir. 1994).

The working environment must be both subjectively and objectively perceived as abusive. Harris v. Forklift Sys., Inc., 114 S.Ct. 367, 370 (1993). Whether the workplace is objectively hostile must be determined from the perspective of a reasonable person with the same fundamental characteristics. See Ellison v. Brady, 924 F.2d 872, 879 (9th Cir. 1991). Hostility must be measured based on the totality of the circumstances. Harris, 114 S.Ct. at 371.

> These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like

10 - ORDER

>any other relevant factor, may be taken into account, no single factor is required.

Id.[5]

At best, plaintiff presents two instances in which he was subject to slurs based upon his race and a lack of response by management to the complaint about racial slurs.  Even though defendant failed to act on the complaints, plaintiff does not allege any further instances of racial slurs following the complaints.

Plaintiff did not complain about the February 7 incident at that time.  While the allegations regarding Lock are abhorrent, this incident, even combined with the February 7 incident, does not demonstrate sufficiently severe and pervasive conduct to be actionable.  See Kortan v. California Youth Authority, 217 F.3d 1104, 1110-11 (9th Cir. 2000) (offensive conduct primarily concentrated to one occasion, with offensive utterances once or twice before, provides no triable issue whether the conduct was frequent, severe or abusive enough to interfere unreasonably with

---

[5]With respect to state law claims under ORS § 659A.030, federal decisions under Title VII generally are instructive.  Fred Meyer, Inc. v. Bureau of Labor and Indus., 152 Or. App. 302, 310 (1998):
>For ... harassment [to be actionable] it must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment. Whether ... harassment at the workplace is sufficiently severe and persistent to affect seriously the psychological well being of employees is a question to be determined with regard to the totality of the circumstances.

Holien v. Sears, Roebuck and Co., 298 Or. 76 (1984) (quoting Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982).

11 - ORDER

employment). The motion for summary judgment is granted with respect to plaintiff's hostile work environment claims.

D.  Intentional Infliction of Emotional Distress

To prevail on an intentional infliction of emotional distress claim, plaintiff must demonstrate that (1) defendant intended to inflict severe emotional distress, (2) defendant's acts were the cause of plaintiff's severe emotional distress, and (3) defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. McGanty v. Staudenraus, 321 Or. 532, 543 (1995).

The intent element of IIED is satisfied not only where the actor desires to inflict severe emotional distress, but also where he knows that such distress is certain, or substantially certain to result from his conduct. McGanty, 321 Or. at 550.

The Oregon Supreme Court has noted that the duty to refrain from abusive behavior in the employment relationship comes close to that of the physician toward a patient. Hall v. The May Department Stores Co., 292 Or. 131, 138 (1981). Thus, the employment relationship may impose a more demanding obligation to refrain from inflicting mental and emotional distress. See id. The consideration of the relationship between the alleged tortfeasor and the alleged victim is relevant to the inquiry regarding the conduct element. See Rockhill v. Pollard, 259 Or. 54, 63 (1971).

It is for the trial court to determine, in the first instance, whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. If the minds of reasonable men would not differ on the subject, the court is obliged to grant summary judgment. Pakos v. Clark, 253 Or. 113, 132 (1969).

Various factors bear upon the offensiveness of the conduct, including whether a special relationship exists between the defendant and the plaintiff, such as that of physician-patient, counselor-client, or common carrier-passenger. Williams v. Tri-County Metropolitan Transportation District of Oregon, 153 Or.App. 686, 689-90 (1998); Erickson v. Christenson, 99 Or.App. 104, 107, rev dismissed 311 Or. 266 (1991). Other factors include whether the conduct was undertaken for an ulterior purpose or to take advantage of an unusually vulnerable individual. See Checkley v. Boyd, 170 Or.App. 721 (2000). The setting in which the allegedly outrageous conduct occurs--for example, in a public venue or within the employment context--also can bear on the degree of offensiveness of the conduct. See, e.g., Hall, 292 Or. at 137; Trout v. Umatilla Co. School Dist., 77 Or.App. 95, 102 (1985).

The mere fact that an employer overworks employees, makes unreasonable demands upon them, and is otherwise less than a model employer does not by itself constitute an extraordinary transgression of the bounds of socially tolerable conduct under

Oregon law. Cf Madani v. Kendall Ford Co., 312 Or 198, 203-06 (1991) (terminating employee for refusing to pull down his pants); Patton v. J.C. Penney Co., 301 Or 117, 124 (1986) (employee terminated because he refused to stop dating co-worker); Watte v. Edgar Maeyens, Jr., M.D., P.C., 112 Or.App. 234, 237 (1992) (employer threw a tantrum, screamed and yelled at his employees, accused them of being liars and saboteurs, then fired them all); Snyder v. Sunshine Dairy, 87 Or.App. 215, 218 (1987) (inconsistent and excessive supervision, unjustified reprimands, threats of termination, requiring the employee to perform menial tasks). See also Wells v. Thomas, 569 F.Supp 426, 433 (EDPa 1983) (placing plaintiff in newly created position without responsibilities, taking away her private office, reassigning her secretary, allowing her phone calls to go unanswered, giving her poor performance evaluations for the first time in 25 years, and terminating her); Beidler v. W.R. Grace, Inc., 461 F.SUPP 1013 (EDPa 1978), aff'd 609 F.2d 500 (3rd Cir. 1979) (plaintiff excluded from meetings necessary to perform his job, found papers constantly rearranged on his desk to annoy him, informed he would be given a new assistant without consultation, learned from rumors that his job was in jeopardy, and evaded by his superior who intimated that the new assistant would be replacing him).

The conduct that plaintiff suffered at the hands of defendant is not sufficiently egregious.[6]  The motion for summary judgment with respect to the intentional infliction of emotional distress claim is granted.

E.   Reckless Infliction of Emotional Distress

Even if such a cause of action exists in these circumstances, summary judgment is appropriate because the alleged conduct does not qualify as an extraordinary transgression of the bounds of socially tolerable conduct.  The motion for summary judgment is granted as to the reckless infliction of emotional distress claim.

F.   Whistleblowing Claim under ORS § 654.062

Plaintiff alleges that he complained to defendant of violation of safety laws and that as a result he was terminated.  However, as with plaintiff's discrimination claims, there is no evidence linking the termination to complaints of safety violations. Plaintiff's deposition establishes that he complained about safety violations prior to being promoted.  The intervening promotion breaks any chain that may have existed between the complaints and

---

[6]Plaintiff does not appear to allege that the actions of Locke and Tallerday form the basis of his infliction of emotional distress claims as he only argues that Sutton engaged in outrageous conduct for terminating plaintiff for complaints about racial comments.  There is insufficient evidence that the termination was based in any way on the complaints.

15 - ORDER

the termination.  The motion for summary judgment is granted as to the claim under ORS § 654.062.[7]

CONCLUSION

For the reasons stated above, defendant's motion for summary judgment (#22) is granted as to all claims and the case is dismissed.  The clerk is directed to enter judgment in favor of defendant and against plaintiff.

DATED this    8th    day of January, 2010.

                                          s/ Michael R. Hogan
                                      United States District Judge

---

[7] Plaintiff's complaints to OSHA cannot support his claim either as such complaints were made post-termination and thus could not have played a role in the termination.

16 - ORDER